## 1

ENRIQUE G. TOUCEDA, Respondent-Appellant, v. CONSOLIDATED CAR HEATING COMPANY, INC., et al., Appellants-Respondents; HAROLD C. TIFFT et al., Respondents-Appellants; FIRST TRUST COMPANY OF ALBANY, Respondent, et al., Defendants.— The plaintiff and the defendant Tifft had developed and patented a dental alloy, known as Ticonium, and a casting machine to be used in connection therewith. They entered into a joint enterprise, under a written agreement dated March 19, 1934, with the defendant Consolidated Car Heating Company, Inc., referred to hereafter as the corporate defendant, and with three of the officers of that company, for the manufacture and sale of the dental alloy and the casting machine. The plaintiff and the defendant Tifft were to receive 20% each, the corporate defendant was to receive 51% and the three officers were to receive 3% each, of the net profits of the enterprise. The business of the enterprise was handled as a division of the corporate defendant's business; a special account was set up to reflect the operations of the enterprise. Periodic accountings were made by the corporate defendant and profits were distributed on the basis thereof. Differences having arisen between the parties as to the amount of the net profits and their distribution, this action was instituted for an accounting. An interlocutory judgment was granted by BERGAN, J., in favor of the plaintiff directing the corporate defendant to file an account and appointing a Referee to take testimony and report. The interlocutory judgment was affirmed by this court (276 App. Div. 885). The chief issue litigated before the Referee and the Special Term was the right of the corporate defendant to add "overheads" to expenditures for advertising, clerical and research work, and materials, and also to add overheads to the cost of dental supplies purchased on behalf of the joint enterprise for resale without being subjected to any manufacturing process. The Special Term found, confirming the Referee's report to the same effect, that the contract between the parties authorized the charging of overheads only in connection with the manufacture of metals and machinery by the corporate defendant for the joint enterprise and that all other expenditures were to be charged directly against the special account without overheads. We agree with this construction of the contract. The rejection of the overhead charges increased the net profits available for distribution. The share of such additional profits to which each of the participants is entitled, together with interest thereon, is reflected in the judgments entered herein. The account filed by the corporate defendant showed a balance of $263,196.99 as of May 31, 1948, in "Undistributed profits" accumulated over the period of the operation of the enterprise. This was invested chiefly in accounts receivable and inventory connected with the joint enterprise. The Referee held that the corporate defendant had in effect distributed its share of the so-called "Undistributed profits" to itself, by reason of the manner in which it set up the accounts on its books and in its statements and he directed that it distribute the balance of these profits to the other participants in proportion to their respective interests. He also allowed interest to the participants, upon their shares of the profits from the time when the profits were earned. The Special Term rejected this portion of the Referee's report and reduced the amount of the proposed judgments recommended by the Referee accordingly. We agree with the Special Term's determination. While the book-keeping methods adopted by the defendant are subject to criticism, they were not, in the language of the Special Term, "tantamount to a distribution of profits." The undistributed profits still remain in the hands of the defendant in the form of accounts receivable, inventory and cash working capital. The retention of

part of the profits for working capital, including sums required for accounts receivable and inventory, was expressly authorized by the contract. The participants will, of course, continue to have an interest in the undistributed profits in proportion to their respective interests in the enterprise. We do not now pass upon the question of whether the amount retained was unreasonably large, nor do we undertake to give specific directions to the corporate defendant as to the manner in which the undistributed profits should be segregated and reflected in its books of account; appropriate action may be taken by the interested parties if the corporate defendant fails to comply with the letter and spirit of the contract in this respect. [For decision, see *ante,* p. 734.] [See *post,* p. 930.]